**LOCAL UNION NO. 337 OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA, an unincorporated voluntary labor organization, Plaintiff,**

v.

**FAYGO BEVERAGES, INC., a Michigan Corporation, and Barry Brown, jointly and severally, Defendants.**

**No. 85–CV–70536–DT.**

United States District Court, E.D. Michigan, S.D.

May 22, 1985.

Jerome S. Coleman, Farmington Hills, Mich., for plaintiff.

Earl R. Boonstra and Mark S. Demorest, Detroit, Mich., for defendants.

OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LA PLATA, District Judge.

On November 29, 1983, Jonas Rogers was discharged from his employment in the production department of Defendant Faygo Beverages, Inc. (hereinafter Defendant). His union, the Plaintiff herein, filed a time-

ly grievance concerning the termination. Ultimately, on January 25, 1984, the jointly selected Arbitrator, in a comprehensive opinion, denied Plaintiff's grievance.

In its Complaint to vacate the opinion and award of the Arbitrator, Plaintiff contended that the Arbitrator's decision (1) exceeded the scope of the Collective Bargaining Agreement and (2) was clearly erroneous and illogical. Both parties filed Motions for Summary Judgment, under Fed.R.Civ.P. 56, asserting that no genuine issue of material fact exists regarding the Arbitrator's award.

An employee at Defendant's principal plant for a period in excess of four years, Jonas Rogers was laid off from his position on October 14, 1983. Shortly prior to his layoff, Rogers submitted a signed, completed change of address form to the personnel department of Defendant, indicating that he was living on Third Street in Detroit. On November 18, 1983, Defendant mailed, by certified letter, a notice of recall to Rogers, directing him to return to work on November 28, 1983:

November 18, 1983

Mr. Jonas Rogers
8347 Third
Detroit, MI 48202
Dear Mr. Rogers:
You are being recalled to work on November 28, 1983. Please call 925–1600 on Wednesday, November 23, 1983 for information regarding your starting time.
You are instructed to report to the Detroit Industrial Clinic, 60 W. Hancock, Detroit, Michigan, before Saturday, November 26, 1983.
*Bring this letter with you to the clinic.*
Failure to report as directed may result in disciplinary action up to and including discharge.
Sincerely,
Pete Onilio
Personnel Representative

Learning from a co-employee that he had been recalled, Rogers arrived at the plant on November 29, 1983, one day after the scheduled recall date. Owing to his failure to appear on the scheduled day, Rogers was suspended by Peter Onelio, a personnel representative. On the following day, Rogers' employment with Defendant was terminated by Robert McKay, the Assistant Director of Personnel.

The rule governing Defendant's recall procedure under the Collective Bargaining Agreement, Art. VI 15, provides:

In the event of a layoff for more than five (5) days, an employee so laid off shall be given seven (7) days' notice by certified letter to his last known address. In the event the employee fails to make himself available for work at the end of said seven (7) days he shall lose all seniority rights under this Agreement.

Rogers' justification for not appearing at the production facility on November 28, 1983, was that the United States Postal Service failed to deliver the certified letter to his home, located on Third Street in Detroit. It is uncontroverted that a letter carrier returned to Defendant the November 18, 1983, certified letter, bearing a notation, "Moved; Left No Address." Additionally a letter apprising Rogers of his employment termination, postmarked December 1, 1983, was returned to Defendant, the letter carrying a notation that the addressee moved without leaving a forwarding address.

On behalf of Rogers, Plaintiff has consistently maintained that the sole reason for the employee's failure to comply with the recall directive was the negligence of the postal service in returning the November 18, 1983, certified letter to Defendant. Plaintiff contends that the employee should not sustain the harsh penalty of discharge where he did not have knowledge of the recall notice.

According to testimony presented at the Arbitration Hearing, two representatives of Defendant inspected Rogers' purported Third Street home on six occasions in December, 1983. In each instance, they were unable to detect any signs of habitation, such as footprints in the snow, maintenance of the property, or evidence of heat

and light. Furthermore, the letter carrier's decision to return the two certified letters to Defendant indicates that it appeared to him that the Third Street property was unoccupied.

In his Opinion, the Arbitrator specifically found that (1) the employee owed a duty, pursuant to the Collective Bargaining Agreement, to advise the employer of his current address; (2) Defendant complied with its duty to mail a certified letter, containing notification of the recall, to Rogers at the last known address; and (3) Rogers was accountable, at least in part, for the letter carrier's return of the certified letters to Defendant. The Arbitrator gauged the credibility of the witnesses, specifically finding that the testimony of Defendant's witnesses was more believable than that of Rogers. In denying the grievance, the Arbitrator concluded:

"Regardless of whether or not Mr. Rogers lived at the Third Street address during the time in question, it is clear that he had a duty to provide the company with an address to which mail regularly could be delivered. If his failure to do this results in his not receiving a recall notice in time for him to report to work on the appointed day, he must bear the penalty resulting from his own failure. "This arbitrator is convinced that the company complied with the contract and that the blame for failure of the recall letter's delivery rests not with the Postal Service, but with the grievant. The result, considering the fact that the grievant was only one day late in reporting to work, may seem harsh. However, the arbitrator, pursuant to Section 25(d) of Article VIII of the contract, has no choice but to enforce the parties' agreement. Consequently, the grievance must be denied."

■ Under statutory and case law, a reviewing court has an extremely circumscribed role in an action to vacate an arbitration award rendered pursuant to the binding arbitration provisions of a Collective Bargaining Agreement. The applicable statute, 9 U.S.C. § 10, provides that Federal Courts may vacate arbitration awards only under the following circumstances:

"(a) Where the award was procured by corruption, fraud, or undue means.
(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960), the Supreme Court enunciated that a reviewing court should not substitute its construction of a Collective Bargaining Agreement for that of the arbitrator:

"[T]he question of interpretation of the Collective Bargaining Agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; insofar as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

■ Applying the foregoing precepts to the matter at bar, this Court concludes that the interpretations placed on the pertinent parts of the Collective Bargaining Agreement by the Arbitrator were permissible. In denying Plaintiff's grievance, the Arbitrator acted within the scope of his authority under the Agreement. While the ramifications of the employee's failure to comply with the recall notification were severe, neither this Court nor the Arbitrator is empowered to alter or amend Article VI, 15 of the Agreement.

This Court notes that, contrary to Plaintiffs assertions, Defendant was not obligat-

ed to provide Rogers with a warning regarding his non-compliance with the recall directive. The controlling term of the Agreement, Article V, 15, clearly informs a laid-off employee that his failure to comply with a recall notice subjects him to the loss of his seniority rights. The contract term relied upon by Plaintiff, Article VII, 23, is inapposite to the instant matter, since its application is confined to the discharge of an employee for misconduct or deficient work performance.

Accordingly, the cross-motion of Plaintiff for summary judgment is hereby DENIED; the motion of Defendants for summary judgment is hereby GRANTED. IT IS FURTHER ORDERED that the arbitration award of January 25, 1984, be enforced in its entirety.

A judgment to that effect will enter.